IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMY SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No.: |
| ) | |
| FRANCES RAYMONVILLE-WATSON, ) | |
| ) | |
| Defendant. ) | **Demand for Jury Trial** |

## COMPLAINT

At 6:00 a.m. on or about February 8, 2024, the Atlanta Police Department planned and executed a pre-dawn search warrant with the assistance of SWAT and other law enforcement officers at the home where Amy Smith lives in Southeast Atlanta. At the time of the raid, Ms. Smith had been sleeping and was naked from the waist up. But even after officers secured the scene, Ms. Smith was not allowed to clothe herself. Instead, she was paraded in full view outside her home. Defendant Raymonville-Watson was one of the officers at the scene and the person who held Ms. Smith in custody, unclothed for hours and for no purpose other than to embarrass and humiliate her. Ms. Smith brings this case against Defendant for the violation of her Fourth and Fourteenth Amendment rights.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Ms. Smith brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of her civil rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because this is the district where Defendants reside or conduct business and where the claims arose.

## PARTIES

4. Plaintiff Amy Smith resides in Fulton County, Georgia.

5. Upon information and belief, Defendant Raymonville-Watson resides in Fulton County. At all times material to allegations herein, Defendant Raymonville-Watson was an officer with the Atlanta Police Department and was acting under color of state law. Defendant Raymonville-Watson is being sued in her individual capacity.

## FACTUAL ALLEGATIONS

6. Officers in the Atlanta Police Department planned and oversaw a raid on Plaintiff's home that she shared with two housemates.

7. Defendant Raymonville-Watson was one of the uniformed officers on the scene of the raid.

8. At around 6:00 a.m. on February 8, 2024, police suddenly entered Ms. Smith's home in Southeast Atlanta.

9. Once in the house, officers began yelling "Police!"

10. The small squad of male officers who entered were masked and carried assault rifles.

11. The SWAT officers'[1] entry surprised Ms. Smith, who was still in her bedroom.

12. Ms. Smith was dressed in pajama pants, but had no top on. Plaintiff immediately grabbed a robe

13. Ms. Smith then put her hands outside her bedroom door and told the officers that she wasn't dressed.

14. The officers would not allow Ms. Smith to put more clothes on so she could cover her breasts.

15. The officers in the house grabbed and pulled Ms. Smith's arms behind her back, causing her robe to fall and exposing her breasts, before taking her outside and handing custody of her over to Defendant Raymonville-Watson.

---

[1] APD's SWAT team hails from its APEX unit, which stands for Atlanta Proactive Enforcement and Interdiction. It replaced the RED DOG unit the City disbanded in 2011.

16. Once outside, Ms. Smith was forced to wait, topless, for an unreasonable amount of time.

17. Eventually, Defendant Raymonville-Watson zip tied Ms. Smith's hands behind her back. The zip ties were visibly too tight and caused Ms. Smith pain, discomfort, and obvious discoloring of her hands.

18. Defendant Raymonville-Watson cut the zip ties off and recuffed Plaintiff using a new pair of zip ties.

19. While being cuffed by Defendant, Ms. Smith's chest remained exposed as she was surrounded by officers.

20. After cuffing Ms. Smith, Defendant Raymonville-Watson could have easily pulled close and tied Ms. Smith's robe to cover her breasts, but she chose not to.

21. Instead, after zip tying Plaintiff's hands, Defendant placed Ms. Smith in the rear seat of an Atlanta Police Department squad car.

22. Other officers placed one of Plaintiff's male housemates in the back of the same police car next to Ms. Smith.

23. Defendant Raymonville-Watson and an unknown male officer, sat in the front of squad car in which Ms. Smith and her housemate were being held.

24. When she was placed into the squad car, Ms. Smith asked for a bra and shirt.

25. Over the next several hours, Ms. Smith and her housemate continued to ask the Defendant Raymonville-Watson and her male colleague to give plaintiff clothing to cover her chest over the next several hours.

26. Defendant Raymonville-Watson refused those requests, and Ms. Smith remained in the squad car, breasts exposed, for several hours.

27. While Ms. Smith was topless in the back of the squad car, an unknown male officer wearing a face covering opened the rear door of the squad car and took Ms. Smith's picture.

28. While Ms. Smith's chest was uncovered, several officers came and went from the squad car, looking in at her through the window.

29. While being held in the squad car, Ms. Smith was not given food or water.

30. Finally, after several hours, Ms. Smith was escorted back into her house and allowed to use the restroom and put on clothing.

31. It was only at this point that Defendant Raymonville-Watson closed Ms. Smith's robe so her chest was no longer exposed to onlookers and other officers.

32. During the search, the police found a sexually suggestive picture of Plaintiff hidden in her room and displayed on the mantel in Plaintiff's mantel.

## COUNT I

33. This count is alleged against Defendant Raymonville-Watson in her personal capacity for the violation of Plaintiff's Fourth and Fourteenth Amendment rights.

34. The manner in which Defendant detained Plaintiff was unreasonable.

35. The security of the scene and the officers conducting the search did not require Plaintiff to be held with exposed breasts.

36. Defendant could have easily covered Plaintiff to prevent Plaintiff from being exposed to her housemate and the scores of other officers on the scene.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks this Court to:

a. Assume jurisdiction over this matter;

b. Provide for a jury trial upon all claims and issues so triable;

c. Award Plaintiff nominal, compensatory, and special damages against Defendant in an amount to be proven at trial;

d. Award punitive damages against Defendant in an amount to be proven at trial;

e. Award Plaintiff reasonable attorney's fees and costs of litigation under 42 U.S.C. § 1988;

f.  Award such other relief to which Plaintiff is entitled either at law or in equity, whether explicitly pleaded or not.

Submitted on May 23, 2025.

| | |
|---|---|
| SPEARS & FILIPOVITS, LLC<br>315 W. Ponce de Leon Ave., Ste. 865<br>Decatur, Georgia 30030<br>404.905.2225<br>jeff@civil-rights.law<br>wingo@civil-rights.law | **Jeff Filipovits**<br>Jeff Filipovits<br>Georgia Bar No. 825553<br><br>**Wingo F. Smith**<br>Wingo F. Smith<br>Georgia Bar No. 147896 |